UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TRAVIS SCOTT GILLIAM, ) | |
| Plaintiff, ) | |
| v. ) | No.: 3:24-CV-452-DCLC-JEM |
| HAWKINS COUNTY FACILITY JAIL, et al., ) ) ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Plaintiff Travis Scott Gilliam, a prisoner at the Hawkins County Jail, filed a (1) pro se prisoner complaint under 42 U.S.C. § 1983 [Doc. 1] and (2) motion for leave to proceed *in forma pauperis* [Doc. 2]. For the reasons set forth below, the Court will grant Plaintiff's motion and dismiss the complaint as frivolous.

**I. MOTION TO PROCEED *IN FORMA PAUPERIS***

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's motion [Doc. 2] and accompanying documents [Doc. 3] demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, Plaintiff's motion [Doc. 2] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902 as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account

for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the PLRA's requirements for payment of the filing fee.

## II.     COMPLAINT SCREENING

### A.     Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404

2

Case 3:24-cv-00452-DCLC-JEM     Document 6     Filed 11/14/24     Page 2 of 8     PageID #: 41

for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the PLRA's requirements for payment of the filing fee.

## II.     COMPLAINT SCREENING

### A.     Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404

U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim against any Defendant for relief under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

B.      **Plaintiff's Relevant Allegations**

At around 6 a.m. on February 17, 2021, Plaintiff had a verbal altercation with another inmate at the Hawkins County Jail [Doc. 1 p. 6]. Afterward, Plaintiff was locked down in his cell when officers approached him and demanded his "chirp" [*Id.*]. When Plaintiff "refused to give it up[,]" Officer McGuiness began searching Plaintiff's cell and then told Plaintiff to stand up, turn around, and place his hands on the wall [*Id.*]. During Officer McGuiness' search of Plaintiff, he inserted two of his fingers into Plaintiff's rectum while squeezing Plaintiff's testicles with his other hand [*Id.*]. Plaintiff then began fighting Officer McGuiness, and once Plaintiff was subdued, Officer McGuiness kicked Plaintiff while he was face down on the floor [*Id.*]. Plaintiff was then handcuffed and transported to the "drunk tank" in booking [*Id.*]. During the transport, Officer Wolfe punched him in the back and Officer McGuiness pushed Plaintiff's face into an exit door and window [*Id.* at 6–7].

Once Plaintiff was placed in the drunk tank, his handcuffs were removed, and he began kicking the door and demanding to file a Prison Rape Elimination Act ("PREA") complaint [*Id.* at 7]. He repeatedly requested medical attention but was denied [*Id.*]. When various officers asked

3

Plaintiff "what the problem was[,]" he repeated what had transpired and was told "good luck with that" [*Id.*].

Plaintiff was taken back to his cell but was denied an opportunity to file a PREA complaint [*Id.*]. Plaintiff asked Lt. Gallion for twenty-four-hour notice before his disciplinary hearing and informed the Lieutenant about Officer Wolfe punching him in the back [*Id.*]. Another officer allowed Plaintiff out of his cell to shower and to file a kiosk medical request [*Id.*]. But when Plaintiff requested "to go to the box again" and file a PREA complaint, he was denied [*Id.*]. So, Plaintiff threw sink water at officers when they next approached his cell and denied his request to file a PREA complaint [*Id.*].

Plaintiff was again taken to the drunk tank [*Id.*]. Plaintiff heard Lt. Gallion talking, and Plaintiff called him a "l[y]ing (Sob) [sic][,]" so Lt. Gallion came into the drunk tank and shut the door behind him [*Id.*]. Plaintiff again asked to file a PREA complaint and was denied [*Id.* at 7]. Two detectives were also at the drunk tank, and they, along with Lt. Gallion, informed Plaintiff, "[Y]ou [are] not going to file charges on my officer" [*Id.* at 9].

It took until February 28, 2021, "to bring this to light" [*Id.*]. On that date, Inmate Darius filed a PREA grievance on the kiosk [*Id.*]. The next day, Lt. Gallion got Plaintiff from his cell and took him to a class/church room [*Id.*]. Lt. Gallion told Plaintiff to give him a statement regarding the PREA allegations [*Id.*]. Plaintiff asked to call his attorney so he could be present while Plaintiff gave his statement [*Id.* at 8]. Lt. Gallion took Plaintiff back to his cell but denied Plaintiff's request to use the telephone [*Id.*]. However, Plaintiff had his "chirp" and used it to text his attorney, who told Plaintiff "not to give a statement until he was there" [*Id.*]. But Plaintiff's attorney never came [*Id.*].

"Within the next day or so[,]" Deputy Young came to Plaintiff's cell and told him to submit to handcuffs [*Id.* at 10]. Plaintiff did so, and as Deputy Young was escorting Plaintiff toward the

4

booking area, Plaintiff saw Sheriff Ronnie Lawson [*Id.*]. Plaintiff told Sheriff Lawson he needed to speak with him, and Sheriff Lawson told Plaintiff, "I done [sic] heard about all this non[]s[e]n[s]e" [*Id.*].

Plaintiff was escorted into the drunk tank, where Sheriff Lawson, Deputy Young, Deputy Manis, and Chief Allen were present [*Id.*]. Sheriff Lawson then began removing Plaintiff's clothes, and Plaintiff told him to stop [*Id.*]. Sheriff Lawson advised Plaintiff that he was getting new clothes, and Plaintiff requested to keep his whites [*Id.* at 10–11]. Sheriff Lawson took all of Plaintiff's other clothes and gave Plaintiff new flip flops [*Id.* at 11]. He told Plaintiff to tell the other officers what had happened [*Id.*]. Plaintiff started crying and told the officers [*Id.*]. Chief Allen and Deputy Young walked out during the process [*Id.*].

While Plaintiff was getting dressed, an officer took a metal detector wand near Plaintiff's buttocks [*Id.*]. Plaintiff asked Sheriff Lawson if he could go to the hospital or seek medical and call his family to report the rape [*Id.*]. His requests were denied [*Id.*]. Moments later, Sheriff Lawson and Chief Allen asked Plaintiff if he was "going to fight his officer that rape[d] [him,]" and Plaintiff replied, "[Y]ou need to do your job and remove this officer from me" [*Id.*]. Chief Allen got red in the face and told Plaintiff, "We do what the hell we want to do" [*Id.*]. Sheriff Lawson walked out, Deputy Young placed Plaintiff back into handcuffs, and Plaintiff was again denied medical assistance and an opportunity to file a PREA complaint [*Id.*].

Plaintiff was transported back to the men's housing area [*Id.* at 12]. On the way, he saw Nurse Hunt and Nurse Arnold and told them he had been raped and needed to file a PREA complaint, but both nurses said there was nothing they could do [*Id.*]. As the door buzzed to allow Plaintiff into the men's area, Deputy Young told Plaintiff he had removed everything from his cell except for the things Plaintiff is permitted to retain by the rules [*Id.*]. When Plaintiff looked in his

5

cell, every single personal item had been taken [*Id.*]. Plaintiff never received any of his things back [*Id.*].

Plaintiff did not receive any incident reports filed on him until he tried to file a PREA grievance [*Id.* at 13]. He wrote numerous letters and tried to speak to lawyers and his trial judge, but no one would help him [*Id.*]. And, in fact, he was removed from the courtroom when he confronted his trial judge about all that had transpired and the lack of accountability [*Id.* at 13–14].

Plaintiff filed numerous kiosk grievances about the rape between February 2021 and September 2021 [*Id.* at 14]. He represents that the replies he received were all lies, except for their assertion that Plaintiff would not give a statement until his attorney could be present [*Id.*].

Plaintiff filed a federal lawsuit[1] [*Id.* at 14–15]. But he "didn[']t know or have the right claim" on the lawsuit, because the lawsuit he filed was for the denial of medical attention [*Id.* at 15]. Even so, he claims all of the information is "on [the] record" in that lawsuit [*Id.*].

In 2022, Plaintiff went to court in his criminal case, and his pleas for help were still denied [*Id.*]. Neither the district attorney nor the judge put any of this information on the record, and he claims that every motion he filed in his case was denied because of a vendetta against him [*Id.* at 16]. All the attorneys and the judge in his criminal proceedings are aware of the crime committed against Plaintiff and refuse to file rape charges against the appropriate officers [*Id.*].

Aggrieved, Plaintiff filed the instant suit on or about November 1, 2024, asking the Court to order "justice to be done" for the physical, emotional, and mental trauma Plaintiff has endured as an alleged ignored victim of sexual assault [*Id.* at 5].

---

[1] The Court takes judicial notice that Plaintiff filed a federal lawsuit in December 2021 regarding the denial of medical treatment at the Hawkins County Jail. *See Gilliam v. Nurse Carmon*, No. 2:21-CV-197 (E.D. Tenn. 2021); *see also United States v. Doss*, 563 F.2d 265, 269 n. 2 (6th Cir. 1977) (providing court may take judicial notice of its own records). That suit was dismissed for failure to state a claim in April 2022 [Docs. 15, 16].

C.     Analysis

Tennessee's one-year statute of limitations for personal injury actions is applicable to Plaintiff's § 1983 claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Tenn. Code Ann.* § 28-3-104; *Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104 in a § 1983 claim). When the statute begins to run, however, is an issue of federal law. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations omitted). Under federal law, a cause of action accrues, and the limitations period begins to run, when the injury forming the basis of the claim is discoverable, s*ee Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)), or when the cause of action is complete, *Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1162 (6th Cir. 2021) (acknowledging that the "standard" rule starting limitations period is "when the plaintiff has a complete and present cause of action").

Here, Plaintiff complains of an alleged sexual assault that occurred on February 17, 2021, and Defendants' subsequent use of force, confiscation of his property, and denial of his requests for medical attention and to file charges and a PREA complaint [*See generally* Doc. 1]. Plaintiff knew of, and had a complete cause of action for, these events in 2021. But he did not file the instant suit until, at earliest, when he signed it on November 1, 2024 [*Id.* at 5]. Therefore, Plaintiff's claims are time barred, and the Court will **DISMISS** Plaintiff's complaint as frivolous.[2]

---

[2] Additionally, Plaintiff has no constitutionally protected interest in filing a PREA compliant, as "violations of PREA cannot be redressed through a private suit under Section 1983[.]" *Gennoe v. Washburn*, No. 3:19-CV-00478, 2019 WL 5693929, at *5–6 (M.D. Tenn. Nov. 4, 2019). Neither does he have a constitutionally protected right to file criminal charges against anyone. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Finally, Plaintiff cannot sustain a § 1983 regarding the loss of his personal property, as he has not pleaded and proved that Tennessee's statutory remedies are inadequate to address the deprivation. *See, e.g., Vick v. Core Civic*, 329 F.Supp.3d 426, 453–54 (M.D. Tenn. 2018). Therefore, these allegations otherwise fail to state a claim under § 1983.

7

*See In re Royal Manor Mgmt., Inc.*, 652 F. App'x 330, 339–40 (6th Cir. 2016) (noting that "courts have no authority" to modify "statute-of-limitations deadlines"); *Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, sua sponte dismissal of the complaint as frivolous is appropriate.") (citation omitted).

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust accounts is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this Memorandum and Order and the accompanying Judgment Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. This action will be **DISMISSED** as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

6. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

**ENTER:**

s/Clifton L. Corker
United States District Judge